UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROBERT J. NELTON**  CIVIL ACTION

**VERSUS**  NO. 23-6066

**FARMERS PROPERTY AND CASUALTY**  SECTION: "G"(4)
**INSURANCE COMPANY, et al.**

## ORDER AND REASONS

Before the Court is Defendant Farmers Property and Casualty Insurance Company's ("Farmers") Motion for Summary Judgment.[1] This litigation involves property damage allegedly caused by Hurricane Ida. Farmers seeks summary judgment in its favor, arguing that because it paid Plaintiff Robert J. Nelton ("Plaintiff") a total of $93,300.48 pursuant to the Appraisal Award provision, Plaintiff cannot maintain claims for breach of contract and bad faith adjusting penalties.[2] Considering the motion, the opposition, the reply memorandum, the record, and the applicable law the Court grants the motion as to Plaintiff's breach of contract claims and denies the motion as to Plaintiff's claim for bad faith adjusting penalties.

## I. Background

Plaintiff owns immovable property located at 4401 Bayouside Drive, Chauvin, Louisiana 70344.[3] Defendants Farmers Property and Casualty Insurance Company and Metropolitan Property and Casualty Insurance Company (collectively, "Defendants") issued a policy of

---

[1] Rec. Doc. 21.

[2] *Id.*

[3] Rec. Doc. 1-2 at 2.

homeowners insurance to Plaintiff under policy number 1691508271 covering Plaintiff for damages to the dwelling, other structures, and contents located on the property resulting from perils, including hurricanes.[4] On or about August 29, 2021, Hurricane Ida made landfall in Louisiana, allegedly causing damages to the property.[5] Plaintiff reported the loss to Defendants and took steps to mitigate damages.[6]

On or about September 24, 2021, Defendants inspected the property and documented the damages.[7] The petition states that the inspection constituted satisfactory proof of loss.[8] On or about September 2, 2022, Plaintiff's counsel sent Defendants a demand letter requesting the amount of $250,120.15.[9] On or about February 15, 2023, Plaintiff invoked the appraisal provisions of the policy.[10] On or about March 7, 2023, Defendants named the appraiser.[11] According to the petition, Plaintiff had not received the appraisal award when this litigation was filed.[12] The petition states, despite being provided with satisfactory proof of loss, Defendants failed to timely and adequately

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

tender payment to Plaintiff.[13] Plaintiff alleges the failure of Defendants to pay the claim was arbitrary, capricious, and/or without probable cause in violation of Louisiana law.[14]

On August 24, 2023, Plaintiff filed a petition against Defendants in the 32nd Judicial District Court for the Parish of Terrebonne.[15] Plaintiff brings claims for breach of insurance contract, violations of Louisiana Revised Statute §§ 22:1892 and 22:1973, intentional and negligent infliction of emotional distress, and negligent claims adjusting.[16]

On March 10, 2025, Farmers filed the instant motion.[17] On April 8, 2025, Plaintiff filed an opposition to the motion.[18] On April 11, 2025, Farmers filed a reply memorandum in further support of the motion.[19]

## II. Parties' Arguments

### A.    *Farmers' Arguments in Support of the Motion*

Farmers seeks summary judgment in its favor, arguing it timely paid Plaintiff the appraisal award for the contractual damages due under the policy, and thus, it did not breach the contract.[20] Farmers explains Plaintiff first provided notice of the alleged loss following Hurricane Ida on or about September 3, 2021.[21] According to Farmers, it initiated loss adjustment and inspected the

---

[13] *Id.*

[14] *Id.* at 4.

[15] Rec. Doc. 1-2.

[16] *Id.* at 4–8.

[17] Rec. Doc. 21.

[18] Rec. Doc. 24.

[19] Rec. Doc. 17.

[20] Rec. Doc. 21.

[21] *Id.* at 2.

property on September 24, 2021, and on October 6, 2021, Farmers issued a timely payment totaling $31,992.65.[22]

Farmers explains on October 12, 2021, Plaintiff contacted Farmers expressing dissatisfaction with the insurance adjuster and the estimate.[23] On October 22, 2021, Farmers contends Plaintiff called and advised that additional damages were found and requested a reinspection, to which Farmers explained the supplemental process and requested that Plaintiff submit contractor bids/estimates and supplemental documentation.[24] Between March 23, 2022 and March 29, 2022, Farmers states that Plaintiff submitted several receipts and invoices confirming replacement of and repairs to the property, and on April 5, 2021, Farmers issued supplemental payment totaling $23,254.20.[25]

On September 19, 2022, Farmers states it received a demand letter and public adjuster estimate from Plaintiff's attorney totaling $250,120.15, which did not account for Plaintiff's deductible and payments previously made by Farmers.[26] According to Farmers, Plaintiff's counsel invoked appraisal on February 15, 2023, and on April 6, 2023, an appraisal inspection was performed.[27] Farmers explains that the appraisal estimate totaled $100,816.47.[28] After accounting for Plaintiff's $7,516 policy deductible and Farmers' prior payments totaling $55,246.84, Farmers

---

[22] *Id.*

[23] *Id.*

[24] *Id.* at 3.

[25] *Id.*

[26] *Id.* at 4.

[27] *Id.*

[28] *Id.*

contends the unpaid portion of the award totaled $38,053.63.[29] Farmers states it issued a supplemental payment to Plaintiff in this amount on August 23, 2023.[30] Farmers avers that, in compliance with the policy, it timely paid Plaintiff the amount awarded pursuant to the appraisal award, and thus, no additional contractual damages can be sought.[31] Farmers argues that because it is not in breach of the insurance contract, Plaintiff's claims for statutory penalties and attorney's fees should also be dismissed since there was no bad faith in handling Plaintiff's alleged losses.[32]

### B. *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff explains that on September 24, 2021, Farmers conducted its first inspection of the property, and on October 6, 2021, Farmers tendered initial payments in amounts of $16,043.78 for Coverage A and $15,948.86 for Coverage B.[33] Plaintiff contends he demanded a reinspection immediately thereafter, but Farmers did not conduct the reinspection as requested.[34] On September 2, 2022, Plaintiff contends his counsel submitted a demand letter to Farmers and enclosed a repair estimate in the amount of $233,673.86 for Coverage A and $16,442.29 for Coverage B, which was denied by Farmers on September 30, 2022.[35] Plaintiff avers Farmers never retained an engineer or otherwise attempted to determine causation, and this constitutes bad faith.[36]

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at 6.

[32] *Id.* at 7.

[33] Rec. Doc. 24 at 2.

[34] *Id.* at 2–3.

[35] *Id.* at 3.

[36] *Id.*

According to Plaintiff, Farmers did not take any other action on the claim until Plaintiff invoked the appraisal provision on February 15, 2023.[37] Plaintiff alleges the appraisal award tendered by Farmers was $38,000 short.[38] Plaintiff contends there are questions of material fact in dispute regarding Farmers' refusal to pay the full value of Plaintiff's claims that pre-date the appraisal award.[39] Plaintiff explains that Farmers' duty under Louisiana law is to adjust and investigate Plaintiff's claims and this duty is not satisfied simply because Farmers requested additional documentation.[40] Plaintiff posits that Farmers had sufficient information to apprise the full value of Plaintiff's claim following the inspection on September 24, 2021, and on September 2, 2022, when Plaintiff's counsel sent Farmers a demand letter including repair estimates.[41] Plaintiff refutes the appraisal award, arguing it is missing damage allegedly caused by Hurricane Ida, and the appraisal award excludes contents and recoverable depreciation.[42] Plaintiff avers there is a dispute of fact of whether the appraisers performed their duties required of them per the policy.[43]

Plaintiff contends he has not yet completed depositions of Farmers' corporate representatives or experts.[44] Plaintiff explains he wishes to depose Farmers' desk field adjusters

---

[37] *Id.* at 4.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 4–5.

[41] *Id.* at 5.

[42] *Id.* at 6.

[43] *Id.* at 13.

[44] *Id.* at 7.

involved with the claim, as well as the appraisers.[45] Plaintiff requests that the Court defer consideration of Farmers' motion for summary judgment until Plaintiff has the benefit of conducting depositions.[46]

Plaintiff contends Farmers cannot meet its burden of proving it properly adjusted Plaintiff's claim as a matter of law.[47] Plaintiff asserts this Court should deny Farmers' motion for summary judgment.[48]

### C.   *Farmers' Arguments in Further Support of the Motion*

In further support of the motion, Farmers contends Plaintiff fails to demonstrate which facts would become available through discovery to warrant a deferral of the Court's ruling on this motion.[49] Farmers avers there is no genuine issue of material fact in dispute.[50] While Plaintiff contends the appraisers did not perform their duties per the policy, Farmers avers Plaintiff fails to demonstrate what duties were required by the policy that the appraisers failed to perform.[51] Farmers explains that the contact states "if the appraisers submit a written report of an agreement to us, the amount agreed upon amount will be the amount of the loss," and the award became

---

[45] *Id.* at 8.

[46] *Id.*

[47] *Id.* at 15.

[48] *Id.* at 19.

[49] Rec. Doc. 25 at 1.

[50] *Id.* at 2.

[51] *Id.* at 3.

binding when the appraisers mutually agreed on the appraisal award, regardless of Plaintiff's disagreement with the award.[52]

According to Farmers, it timely paid what was owed for the claim prior to the appraisal award.[53] Farmers contends it issued supplemental payments after receiving satisfactory proof of loss.[54] Farmers explains it did not reinspect the property because Plaintiff chose to go through the supplemental claims process.[55] Farmers avers it timely and appropriately adjusted Plaintiff's claim in good faith.[56]

Following the September 3, 2022 demand letter from Plaintiff's counsel, Farmers explained it reasonably disputed the amounts of damages and causation.[57] While Plaintiff argues that Farmers used requests for additional information as an attempt to avoid its duty of good faith, Farmers contends this assertion is unfounded.[58]

Farmers argues it is not liable to Plaintiff under Louisiana Revised Statute §§ 22:1892 or 1973.[59] Farmers contends the undisputed facts demonstrate that Farmers had reasonable grounds

---

[52] *Id.* at 4.

[53] *Id.* at 5.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 6.

to dispute making additional payments and to request more information.[60] Farmers contends it did not act in bad faith, rather there was a reasonable dispute with the customer.[61]

Farmers argues the appraisal award is evidence Farmers was correct in disputing the amount of damages claimed by Plaintiff in the demand letter.[62] Farmers points out that the appraisal award was closer to the amount of damages Farmers initially estimated, $62,762.84.[63] Farmers contends this supports its refusal to pay the damages claimed by Plaintiff in the amount of $250,120.15.[64] Farmers avers that Plaintiff's dissatisfaction with the outcome of the appraisal process does not create a triable issue, and the Court should grant the motion for summary judgment.[65]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[67] All reasonable inferences are drawn in favor of the nonmoving

---

[60] *Id.*

[61] *Id.* at 7.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at 9.

[66] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[67] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

party.[68] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[69] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[70] The nonmoving party may not rest upon the pleadings.[71] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[72]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[73] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[74] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how

---

[68] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[69] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[70] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[71] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[72] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[73] *Celotex Corp.*, 477 U.S. at 323.

[74] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

that evidence supports the nonmoving party's claims.[75] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[76]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[77] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[78]

## IV. Analysis

### A. *Outstanding Discovery*

As an initial matter, Plaintiff argues that additional discovery is necessary to develop material facts and this Court should deny the instant motion as premature. Federal Rule of Civil Procedure 56 does not require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Federal Rule of Civil Procedure 56(d) is his remedy.[79] The Fifth Circuit has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the

---

[75] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[76] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[77] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[78] *Morris*, 144 F.3d at 380.

[79] *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1081 (Fed. Cir. 1989); *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843–44 (11th Cir. 1989); *American Nurses Association v. State of Illinois*, 783 F.2d 716, 729 (7th Cir. 1986); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985); *United States of America, acting Through the Small Business Association v. Light*, 766 F.2d 394, 397 (8th Cir. 1985). Federal Rule of Civil Procedure 56(f) was recodified without substantial change in the 2010 amendments as Federal Rule of Civil Procedure 56(d).

record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.[80]

The protection afforded by Rule 56(d) is an alternative to a response in opposition to summary judgment under Rule 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment.[81] To obtain a Rule 56(d) continuance, the nonmovant must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."[82] The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts.[83]

Plaintiff here did not file an affidavit or declaration. The Fifth Circuit has observed that "[w]hile a party's failure to comply with Rule 56(d) procedure does not preclude consideration of the motion, some equivalent statement, preferably in writing ... is to be expected."[84] Assuming, that Plaintiff's request for additional discovery in the opposition memorandum constituted a request for a Rule 56(d) continuance, the Court finds that Rule 56(d) may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate "how the

---

[80] *Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1029–30 (5th Cir. 1983). *See Fisher v. Metropolitan Life Insurance Co.,* 895 F.2d 1073 (5th Cir. 1990) and *Netto v. Amtrak,* 863 F.2d 1210, 1216 (5th Cir. 1989).

[81] 10A Wright, Miller, and Kane, *Federal Practice and Procedure* § 2740 (1983).

[82] *Securities and Exchange Commission v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981) (quoting *Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289, 297 (8th Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)).

[83] *Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 873 (5th Cir. 1978).

[84] *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

additional time will enable him to rebut the movant's allegations of no genuine issue of fact."[85] Plaintiff's casual reference to the existence of outstanding discovery falls short of showing how additional time would enable it to meet its burden in opposing summary judgment. As such, the Court rejects Plaintiff's argument and will consider Farmers' motion on the merits.

### B.     *Plaintiff's Contractual Claims*

Farmers argues the contractual damages under the insurance policy at issue are set at $100,816.47 based on the August 8, 2023 Appraisal Award, which was timely paid by Farmers on August 23, 2023, and thus, no additional contractual damages can be sought. In opposition, Plaintiff argues that the appraisal award was improper, payment was insufficient under the contract, and the delay in payment constitutes a breach of the contract.

"Under Louisiana law, '[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'"[86] "Interpretation of a contract is the determination of the common intent of the parties."[87] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[88] "Courts lack the authority to alter

---

[85] *Weir v. Anaconda Co.,* 773 F.2d 1073, 1083 (10th Cir. 1985) (quoting *Patty Precision v. Brown & Sharpe Mfr. Co.,* 742 F.2d 1260, 1264 (10th Cir. 1984)). In *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 833 (10th Cir. 1986).

[86] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 206 (5th Cir. 2007) (*quoting Cadwallader v. Allstate Ins. Co.,* 848 So. 2d 577, 580 (La. 2003)).

[87] La. Civ. Code art. 2045.

[88] *Id.*

the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[89]

The insurance policy's "Appraisal" provision provides:

If you and we fail to agree on the amount of the loss, either you or we can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, you or we can request that the choice of an umpire be made by a judge or court of record in the state where the residence premises is located.

The appraisers will separately set the amount of loss determining the full replacement cost and actual cash value for each item as needed. If the appraisers submit a written report of an agreement to us, the amount agreed upon will the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on you and us when filed with us.

You will pay the appraiser selected by you. We will pay the appraiser selected by us. You and we will split the other expenses of appraisal and the fee of the umpire.[90]

Contractually specified appraisal awards are presumed accurate.[91] Further, as the policy explicitly states that "[t]he written award by two of these three people for any item will set the amount of loss and is binding on you and us when filed with us." The burden of demonstrating that the award should not be confirmed must fall upon the party challenging it.[92]

---

[89] *Cadwallader*, 848 So. 2d at 580.

[90] Rec. Doc. 21-3 at 32.

[91] *See In re Waters,* 93 F.2d 196, 200 (5th Cir.1937) (surveying cases from numerous jurisdictions to determine that "every reasonable intendment and presumption is in favor of an award of appraisers selected to determine the value of property lost").

[92] *See* La. Civ. Code arts. 1983, 2045–46; *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.,* 681 F. Supp. 2d 748, 754 (E.D. La. Jan. 10, 2010).

First, Plaintiff argues the appraisal award is invalid because Plaintiff's selected appraiser did not sign the appraisal award. However, a review of the record indicates the Appraisal Award was signed by two appraisers, Bobby Foote and Tim May.[93] Plaintiff further argues contents were not included in the Appraisal Award, however, a review of the Appraisal Award indicates that the amount of $4,200 was awarded for the actual cash value for "Contents."[94] As stated above, the appraisal provision provides that "[t]he written award by two of these three people for any item will set the amount of loss and is binding on you and us when filed with us." Plaintiff has not provided any evidence disputing the agreed upon Appraisal Award amount. Reasonable differences in opinion are not sufficient to overturn a binding appraisal award.[95] It is undisputed that Plaintiff received a total of $93,300.48, minus the $7,516 deductible, in accordance with the Appraisal Award amount of $100,816.47. The Appraisal Award is binding on the parties. For these reasons, the Court grants summary judgment in Farmers' favor as to Plaintiff's breach of contract claim.

### B. *Plaintiff's Bad Faith Claims*

Farmers seeks summary judgment dismissing Plaintiff's bad faith claims pursuant to Louisiana Revised Statute §§ 22:1892 and 22:1973. Section 1892 is titled "Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; extension of time to respond to claims during emergency or disaster; penalties; arson-related claim suspension." That section provides in relevant part:

---

[93] Rec. Doc. 24-9.

[94] *Id.*

[95] *See Island Concepts, LLC v. Certain Underwriters at Lloyd's, London,* 2014 WL 5524379 (E.D. La. Oct. 31, 2024).

> All insurers issuing any type of contract ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. . . . Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. . . . All insurers shall make a written offer to settle any property damage claim, including third-party claim, within thirty days after receipt of satisfactory proof of loss of that claim. . . . [F]ailure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss. . . .[96]

Section 1973 is entitled "Good faith duty; claims settlement practices; causes of action; penalties." It provides, in relevant part:

> An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach. . . . Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:
> . . .
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
> (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.[97]

"One who claims entitlement to penalties and attorney fees [under these statutes] has the burden of proving the insurer . . . was arbitrary, capricious, or without probable case."[98] The plaintiff must show that the insurer willfully refused to pay, and this refusal was not based on a

---

[96] Louisiana Revised Statute § 22:1892.

[97] Louisiana Revised Statute § 22:1973.

[98] *Reed v. State Farm Mut. Auto. Ins. Co.,* 2003–0107 (La.10/21/03); 857 So.2d 1012, 1020.

good-faith defense.[99] If there is a reasonable and legitimate dispute regarding the extent of the insurance claim, the court should not infer bad faith from an insurer's failure to pay within the time limits provided by statute.[100]

Farmers argues Plaintiff's claims for bad faith penalties should be dismissed because it timely paid Plaintiff pursuant to the appraisal award.[101] Plaintiff contends there are questions of material fact in dispute regarding Farmers' refusal to pay the full value of Plaintiff's claims that pre-date the appraisal award.[102] Having carefully considered the law and facts in the record, the Court finds that there are genuine issues of material fact in dispute, which preclude summary judgment. "When the insured claims penalties for refusal to pay a claim timely, the inquiry usually focuses on whether the insurer acted reasonably in its adjustment of the claim based on the facts known or that should have been known by the insurer. Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific."[103] For these reasons, it would be inappropriate to grant summary judgment on these issues. Accordingly,

---

[99] *Reed*, 857 So.2d at 1021.

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:15 (4th ed. 2020); *see also Goree v. Lincoln Parish Detention Center Com'n*, No. 09-745, 2010 WL 4295328, at *3 (W.D. La. Oct. 22, 2010) (citing *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) (*rev'd on other grounds*)).

**IT IS HEREBY ORDERED** that Farmers' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** as to the claim for breach of contract. The motion is **DENIED** as to the claim for bad faith adjusting penalties.

**NEW ORLEANS, LOUISIANA**, this 22nd day of August, 2025.

*[signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**